## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| **HERMAN GIBSON,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION FILE** |
| | : | |
| **MICHAEL J. ASTRUE,** | : | **NO. 1:09-CV-677-AJB** |
| ***Commissioner of Social*** | : | |
| ***Security Administration,*** | : | |
| | : | |
| **Defendant.** | : | |

## <u>O R D E R   A N D   O P I N I O N</u>[1]

Plaintiff Herman Gibson brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of the final decision of the Commissioner of the Social Security Administration ("the Commissioner") denying his application for Social Security Disability Benefits ("DIB") and Supplemental Security Income ("SSI").[2] For

---

[1]     The parties have consented to the exercise of jurisdiction by the undersigned pursuant to 28 U.S.C. § 636(c) and FED. R. CIV. P. 73. [*See* Dkt. Entry dated 4/17/2009]. Therefore, this Order constitutes a final Order of the Court.

[2]     Title XVI of the Social Security Act, 42 U.S.C. § 1381, *et seq.*, provides for supplemental security income for the disabled. Title II of the Social Security Act provides for federal disability insurance benefits. 42 U.S.C. § 401, *et seq.* Title XVI claims are not tied to the attainment of a particular period of insurance eligibility. *Baxter v. Schweiker*, 538 F. Supp. 343, 350 (N.D. Ga. 1982). The relevant law and regulations governing the determination of disability under a claim for disability insurance benefits are identical to those governing the determination under a claim for

the reasons set forth below, the undersigned **REVERSES** the decision of the Commissioner and **REMANDS** the matter to the Commissioner for further consideration of Plaintiff's claims consistent with this Order.

## I.    PROCEDURAL HISTORY

Plaintiff initially filed an application for DIB and SSI on April 29, 2005, alleging disability commencing on November 29, 2004. [Record (hereinafter "R") 56]. The application was denied initially and on reconsideration. [R26-36].

Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"). [R37-42]. An evidentiary hearing was held on August 6, 2008, [R449-76], which resulted in a "Notice of Decision-Unfavorable," dated September 26, 2008, denying Plaintiff's claims on the grounds that he retained the Residual Functional Capacity ("RFC") to perform light work which exists in significant numbers the national economy. [R12-25]. Plaintiff requested review by the Appeals Council which,

---

supplemental security income. *Davis v. Heckler*, 759 F.2d 432, 435 n. 1 (5th Cir. 1985). Title 42 U.S.C. § 1383(c)(3) renders the judicial provisions of 42 U.S.C. § 405(g) fully applicable to claims for SSI. In general the legal standards to be applied are the same regardless of whether a claimant seeks DIB or to recover SSI. However, different statutes and regulations apply to each type of claim. Many times parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this Report should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations of statutes or regulations found in quoted court decisions.

on December 30, 2008, denied Plaintiff's request, concluding that there was no basis under the regulations for granting the request for review, thus making the ALJ's decision the final decision of the Commissioner.  [R7-11].

Plaintiff, having exhausted all administrative remedies, filed this action on February 18, 2009.   [Doc. 2].   The Commissioner filed the transcript of the administrative proceedings on June 8, 2009.  [Doc. 8].  The matter is now before the undersigned upon the administrative record, the parties' pleadings, briefs and oral argument, and is ripe for review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II.    PLAINTIFF'S CONTENTIONS

As set forth in Plaintiff's brief, the issues to be decided are as follows:

1.    At step three of the disability determination process, the ALJ must determine whether a claimant's impairments meet or equal a Listing.  In the case at hand, the ALJ failed to properly consider whether Gibson's diminished intellectual functioning met or equaled Listing 12.05(C).  Where an ALJ fails to perform his duty at step three of the disability determination process, is his decision based on substantial evidence?

2.    The ALJ must pose a hypothetical question that includes all of a claimant's impairments, and the VE's response must comply with Social Security Ruling 00-4p.  In the case at hand, the ALJ's hypothetical question does not include all of Gibson's impairments.  Additionally, the VE's response to the ALJ's  hypothetical is not consistent with SSR 00-4p.

3

> Where the ALJ's hypothetical question is imprecise, and the
> VE's response is inconsistent with SSR 00-4p, is the ALJ's
> reliance on the VE's response based on substantial evidence?

3.      The ALJ is required to consider all impairments documented in the record in determining whether a claimant is disabled. The ALJ failed to properly consider all of Gibson's impairments because he failed to properly evaluate Gibson's mental impairment. Where an ALJ fails to consider all of a claimant's impairments in combination, is his decision based on substantial evidence?

[Doc. 112 at 4-15].

## III.    STATEMENT OF FACTS

### A.    *Factual Background*

Plaintiff was born on July 9, 1959, and was 49 years old at the time of the administrative evidentiary hearing. [R456]. The last grade Plaintiff completed was the eleventh grade. [*Id.*].[3] His past relevant work was as a construction laborer. [R61, 66,

---

[3]      An undated Disability Report-Adult reflects that Plaintiff completed the eleventh grade in approximately 1975 and was in no special education classes. [R66]; *see also* R147 (reflecting that Gibson finished eleventh grade but did not get a GED, did not repeat any grades and was never in special education).

In a discharge summary report from the University of Kentucky Hospital, Albert B. Chandler Medical Center, University of Kentucky, dated March 31, 1975, when Plaintiff was 15 years old and a high school sophomore, he self-reported making "straight Fs." The report further explains that "[h]e says this with a smile and does not seem to be particularly worried about the situation. He prefers to go to school and do nothing." [R123].

73-75, 472]. Plaintiff alleges disability due to a back injury, depression, arthritis in both elbows, seizures, emphysema, high blood pressure, and spots on his lungs. [R60, 459-61].

### B. Medical Records

The medical evidence is comprised of records from (1) University Hospital from 1975; (2) DeKalb Medical Center from 2005; (3) Dr. Stephen Hamby from 2005; (4) Rob D. Minks, D.O., from 2005; (6) Dr. G.N. Kini from 2006 and 2008; (7) Dr. Enrique Flores from 2005-2006; (8) Conyers Family Practice from 2005-2006; (9) Rockdale Medical Center from 2005-2006; (10) Dr. Kaushik Amin from 2006-2007; (11) Comprehensive Psychiatric Care from 2005-2008; (12) Dr. Anil Patel from 2007-2008; (13) Suwanee Pain Management Center from 2008, and (14) State agency non-examining physicians, including records from Dr. Shelby Gennett, Dr. Russell Wallace, Dr. Robert Coyle, and Dr. John Heard.

Review of these records discloses that in April 2005, Plaintiff received treatment for back pain, abdominal pain, seizures, and dizziness at Conyers Family Practice. [R250]. An X-ray of Plaintiff's lumbar spine revealed degenerative disc disease of the lumbar spine. [R257]. Also in April 2005, Plaintiff began treatment with

5

Asar Aseem, M.D.  Plaintiff's GAF at that time was 60.[4]  Dr. Aseem prescribed Xanax

to treat Plaintiff's anxiety.  [R372-375].

In May 2005, Plaintiff began receiving treatment from Rob D. Minks, D.O.

[R156].  Dr. Minks prescribed Lortab for Plaintiff's back pain.  [*Id*.].  Plaintiff also

complained to Dr. Minks about elbow pain.  [*Id*.].  Also in May 2005,  a cervical spine

MRI revealed that Plaintiff had multi-level degenerative spondylosis.[5]  However, the

_____

[4]        GAF stands for Global Assessment Functioning.  Global Assessment of Functioning is for reporting a mental health clinician's judgment of the individual's overall level of functioning and carrying out activities of daily living.  This information is useful in planning treatment and measuring its impact, and in predicting outcome. American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders (Fourth Edition Text Revision) ("DSM-IV-TR") at 32.   The Global Assessment of Functioning Scale is a 100-point scale divided into 10 ranges of functioning.   The description of each 10-point range in the GAF scale has two components: the first covers symptom severity, and the second part covers functioning. It measures a patient's overall level of psychological, social, and occupational functioning on a hypothetical continuum.  The GAF does not include impairment in functioning due to physical (or environmental) limitations.  *Id.*

A GAF of 60 indicates moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning  (e.g.,  few  friends,  conflicts  with  peers  or  co-workers). http://www.dpa.state.ky.us/library/manuals/mental/Ch22.html (Last visited August 4, 2010).

[5]        Spondylolysis is a common clinical condition that can result in low back pain. http://emedicine.medscape.com/article/395916-overview (last visited August 4, 2010).

6

degree of osteophyte[6] encroachment could have been overestimated due to balloon with cortical bone.[7]  [R328].

In June 2005, Plaintiff reported difficulty sleeping due to pain.  Plaintiff also required treatment at this time for high blood pressure.  [R247-48].

On August 5, 2005, Plaintiff underwent a psychological examination with Stephen Hamby, Ph.D.  [R146-51].  Dr. Hamby administered the Wechsler I.Q. test, which revealed a verbal I.Q. of 71, a performance I.Q. of 75, and a full-scale I.Q. of 70. [R149].  Dr. Hamby  found the test to be an accurate reflection of Plaintiff's abilities, and diagnosed borderline intellectual functioning.  [R150].

In September 2005, Dr. Shelby Gennett, a non-examining agency consultant, found that Plaintiff's mental impairment(s) caused a "moderate" degree of limitation in concentration, persistence, and pace.  [R170].  Dr. Gennett also found that Plaintiff was moderately limited in his ability to understand, remember, and carry out detailed instructions.  [R174].

---

[6]    An   osteophyte   is   a   pathological   bony   outgrowth. http://www2.merriam-webster.com/cgi-bin/mwmednlm. (Last visited August 4, 2010).

[7]    A cortical bone is the compact bone of the shaft of a bone that surrounds the marrow cavity.   http://medical-dictionary.thefreedictionary.com/cortical+bone. (Last visited August 4, 2010).

AO 72A
(Rev.8/8
2)

In October 2005, Dr. Russell Wallace, a non-examining agency consultant found that Plaintiff could lift/carry 50 pounds occasionally and 25 pounds frequently, sit, stand and/or walk for 6 hours each in an 8-hour day, and could never climb ladders, ropes, and scaffolds. [R178-85].

In January 2006, Dr. Robert Coyle, another non-examining agency consultant, found that Plaintiff's mental impairment(s) also caused a "moderate" degree of limitation in concentration, persistence, and pace. [R196]. Dr. Coyle also found that Plaintiff was moderately limited in his ability to understand, remember, and carry out detailed instructions. [R200].

In February 2006, Plaintiff was examined by a cardiologist, Enrique A. Flores, M.D. [R217-18]. Plaintiff complained of experiencing severe chest pain. [R217]. Dr. Flores examined Plaintiff and performed a cardiac catheterization.[8] [R213, 218]. He diagnosed mild coronary artery disease. [R213]. Dr. Flores recommended

---

[8]    A cardiac catheterization a procedure to examine blood flow to the heart and test how well the heart is pumping. A doctor inserts a thin plastic tube into an artery or vein in the arm or leg. From there it can be advanced into the chambers of the heart or into the coronary arteries. http://www.americanheart.org/presenter.jhtml?identifier=4491. (Last visited August 4, 2010).

8

that Plaintiff discontinue tobacco use, and begin taking medication for hypertension. [*Id.*].

In February 2006, Plaintiff was also examined by G. M. Kini, M.D. [R204-12]. Plaintiff complained of back pain, depression, arthritis in his elbows, seizures, emphysema, and high blood pressure. [R204]. Upon examination, this examiner noted no edema, clubbing, cyanosis, or decreased grip strength. [R205]. X-rays of the lumbar spine were normal. [*Id.*]. Dr. Kini diagnosed chronic back pain, depression, and hypertension. [*Id.*].

In March 2006, John Heard, M.D., a non-examining agency consultant found that Plaintiff could lift/carry 20 pounds occasionally and 25 pounds frequently, sit, stand and/or walk for 6 hours each in an 8-hour day, and could never climb ladders, ropes, and scaffolds. [R222-23].

In May 2006, Plaintiff continued to complain of anxiousness and still required Xanax for his anxiety. [R370]. Plaintiff continued taking Xanax through August 2007. [R363-69].

9

In October 2006, Plaintiff was seen by Kaushik Amin, M.D., for COPD[9] and chronic neck and back pain.  [R353-55].  Plaintiff continued treatment for these conditions with Dr. Amin through March 2008.  [R333-52, 377-86].  In June 2007, a lumbar spine MRI revealed disc degeneration and bulging at L3-4.  However, the vertebrae were noted to "seem stable."  [R338].  Plaintiff also was found to have minor facet disease[10] at L5-S1 and a small facet effusion on the right at L4-5.  [*Id*.].

In April 2008, Plaintiff was again examined by Dr. Kini.  [R387-402].  Plaintiff was taking Lortab for pain and Xanax for anxiety.  [R387].  Dr. Kini noted no edema, clubbing, cyanosis, decreased grip strength, or loss of range of motion.  [R388].  Plaintiff was diagnosed with chronic back pain, mild COPD, and hypertension.  [*Id*.].

---

[9]     COPD, or chronic obstructive pulmonary disease, is a progressive disease that makes it hard to breathe.  "Progressive" means the disease gets worse over time. COPD can cause coughing that produces large amounts of mucus (a slimy substance), wheezing, shortness of breath, chest tightness, and other symptoms.  Cigarette smoking is the leading cause of COPD.  Most people who have COPD smoke or used to smoke.  Long-term exposure to other lung irritants, such as air pollution, chemical fumes, or dust, also may contribute to COPD. http://www.nhlbi.nih.gov/health/dci/Diseases/Copd/Copd_WhatIs.html. (Last visited August 4, 2010).

[10]     Facet disease is basically defined as arthritis or degeneration in one or more facet joints, causing pain in the joints themselves as well as pain that radiates to the hips, thighs, shoulders, and arms.  This pain, in addition to overall stiffness, can limit your ability to work, play golf, garden, walk through a store, and even tie your shoes.  http://www.facetdiseasefacts.com/.  (Last visited August 4, 2010).

Dr. Kini also noted Plaintiff could work "if he stops smoking and gets off all the drugs he should not be taking." [*Id*.].

In July 2008, Plaintiff was seen at the Suwanee pain management center for complaints of pain. [R403]. Plaintiff was prescribed Lortab for his pain and advised to return in August 2008. [R403-04].

D.     *Evidentiary Hearing Before The ALJ*

Plaintiff was 45 years old at the time of the hearing. [R456]. He completed the eleventh grade and did not receive any other schooling. [*Id*.]. Plaintiff testified that since 1993, he has worked as a construction laborer and concrete finisher. [R457]. Plaintiff further testified that he worked for one week in January 2005, but he had a seizure, so he could not continue working. [R458-59]. Plaintiff explained that he could not work because "my back hurt, and it kept hurting, it kept getting worse and worse." [R459-60]. He further explained that his back pain just keeps getting worse and that it is "all through my back, my ribs too." [R465]. Plaintiff also testified that his arms "go numb" at certain times and his legs bother him a lot, which makes walking difficult. [R466].

Plaintiff further testified that he has breathing problems and smokes "like less than half a pack a day now," despite being advised to quit smoking. [R460]. He

11

explained that he gets out of breath if he walks up stairs or walks more than a quarter of a mile. [R469]. In addition to his back pain, Plaintiff testified that his elbows cause him serious problems due to bone spurs. [R461-62]. Plaintiff further testified that he has high blood pressure and spots on his lungs. [R461].

Plaintiff testified that he "very seldom" will drink alcohol. [R462]. Plaintiff explained that he will sometimes go three months without taking a drink, but that sometimes he'll drink "18 maybe every two weeks, every week, once a weekend, you know, just very seldom like that." [R462].

Plaintiff also testified that he receives psychiatric treatment for anxiety. [R464]. Plaintiff explained that he sees a doctor every three month who provides him with medication. [R465]. He further explained that his anxiety is controlled as long as he takes medication. [R470].

The vocation expert ("VE") testified that Plaintiff's past relevant work as a construction laborer is classified as heavy, unskilled work. [R472].

The ALJ posed four hypothetical questions to the VE. He first asked whether a hypothetical person with the residual functional capacity (RFC) for a range of light work and the non-exertional impairments that precluded climbing of ladders, ropes, and scaffolds, any crawling, and would preclude an individual from working around

12

hazards such as dangerous or moving machinery or the operation of motor vehicles or working at unprotected heights, limited to no more than frequent climbing of stairs and ramps, stooping, bending from the waist to the floor, and crouching, and would be limited to jobs that would require no more than simple repetitive tasks and jobs that would be consistent with someone who might be diagnosed as having borderline intellectual functioning would be able to perform work in the national economy. [R472].  The ALJ also asked the VE to assume that such a hypothetical person was of the Plaintiff's age, limited education, and had Plaintiff's work history.  [R473]. The VE responded that such person could perform the light, unskilled job of garment sorter; the light, unskilled job of production assembler; and the light unskilled job of electrical assembler.  [R473].

The ALJ then inquired whether a hypothetical person with the same characteristics, but suffered from mild to moderate pain could perform these jobs. [R474].  The VE responded that such a person could not perform the jobs listed.  [*Id.*].

The ALJ then inquired whether such a person with the same characteristics, but suffered from severe pain could perform any jobs in the national economy.  [R474]. The VE responded that such a person could not perform any competitive employment. [*Id.*].

13

Finally, the ALJ inquired as to whether a hypothetical person with a combination of impairments that would preclude the ability to work eight hour days, five days a week could perform work in the national economy.  [R474].  The VE responded that such a person would be precluded from competitive employment.  [*Id*.].

On cross-examination, the VE testified that the position of garment sorter would require a lot of twisting, bending, sitting and standing.  [R475].

## IV.   ALJ'S FINDINGS OF FACT

The ALJ made the following findings of fact:

1.   The claimant met the insured status requirements of the Social Security Act through June 30, 2007.

2.   The claimant has not engaged in substantial gainful activity since the alleged onset of disability.  (20 C.F.R.404.1520(b), 404.1571, *et seq*., 416.920(b), and 416.971, *et seq*.).

3.   The claimant has the following severe impairments: hypertension; back pain; substance abuse; and borderline intellectual functioning (20 C.F.R. 404.1520 (c) and 416.920 (c)).

4.   The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and  416.926).

5.   After careful consideration of the entire record, the undersigned finds that the claimant has the  residual functional capacity to

14

perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) with limitations. Specifically, the undersigned finds that the claimant can lift, carry, push, and pull 20 pounds occasionally and 10 pounds frequently. He can sit/stand/and walk for 6 hours (each) in an 8-hour work-day. However, due to his impairments, the claimant is limited to no more than frequent climbing of stairs, stooping, crouching, and bending at the waist to the floor. He is also to avoid climbing ladders, ropes and scaffolds; crawling; squatting; and work around hazards such as unprotected heights; machinery; and moving vehicles. Finally, due to his mental impairments, the claimant is limited to the performance of simple, repetitive, non-detailed tasks, and work which would be consistent with his diagnosis of borderline intellectual functioning.

6. The claimant is unable to perform any past relevant work (20 C.F.R. 404.1565 and 416.965).

7. The claimant was born on July 9, 1959 and was forty-five years old, which is defined as a younger individual age 18-49, on the alleged onset date (20 C.F.R. 404.1563 and 416.963).

8. The claimant has a limited education and is able to communicate in English (20 C.F.R. 404.1568 and 416.968).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that claimant can perform (20 C.F.R. 404.1560(c), 404.1566, 416.960(c), and 416.966).

10. The claimant has not been under a disability, as defined in the Social Security Act, from November 29, 2004 through the date of this decision (20 C.F.R. 404.1520(g) and 416.920(g)).

[R17-24].

15

AO 72A
(Rev.8/8
2)

The ALJ determined that Plaintiff was not disabled at any relevant time prior to his decision.  [R24].  In making this determination, the ALJ noted that Plaintiff's claims of a seizure disorder, shortness of breath and emphysema, and anxiety and depression were not severe impairments because these conditions were not supported by the medical evidence.  [R17-18].

The ALJ also found that Plaintiff did not meet the requirements of Listings 12.04, 12.05, and 12.09.  In making this determination, the ALJ noted that the Listing 12.04 "Paragraph B" or 12.05 "Paragraph D" criteria were not satisfied because Plaintiff had only a mild restriction in activities of daily living, and social functioning; moderate difficulties with concentration, persistence and pace; and no episodes of decompensation.  [R19].  The ALJ also determined that Listing 12.04 "Paragraph C" and Listing 12.09 criteria were not met because there was no evidence to support a finding that Plaintiff had repeated episodes of decompensation, the inability to handle even a minimal increase in mental demands without decompensating, or a current history of one or more year's inability to function outside of a highly supportive living arrangement.  [*Id*.].  Additionally, the ALJ noted that Listing 12.05 "Paragraph B" was not met because Plaintiff did not have a valid verbal, performance, or full scale IQ score of 59 or less, and Listing 12.95 "Paragraph C" was not met because Plaintiff did

16

not have a valid verbal, performance, or full scale IQ score of 60 through 70 and a physical impairment or mental impairment imposing any additional and significant work-related limitation of function. [*Id.*].

The ALJ noted Plaintiff's subjective complaints regarding his back pain, elbow spurs, arm numbness, difficulty walking, swollen ankles, trouble bending and lifting more than a gallon of milk, and difficulty climbing stairs. [R20-21]. The ALJ then discounted Plaintiff's subjective complaints as not credible because Plaintiff did not seek treatment for his severe impairments until five months after he alleged disability, his hypertension was controlled with medication and he had no side effects, he was repeated noted to have average intellect and was never in special education courses or failed a grade, and that Plaintiff's back pain was primarily controlled through medication refills, and physical examinations noted no abnormalities with respect to his musculoskeletal and neurological/sensory examinations. [R21]. The ALJ also noted that two separate consulting examiners found unremarkable physical examinations and one physician noted drug-seeking behavior. [R22]. Finally, the ALJ discounted Plaintiff's subjective complaints due to Plaintiff's history of alcohol abuse. [*Id.*].

17

Next, the ALJ determined that the opinions of the non-examining state agency physicians and other physicians were entitled to great weight because their opinions were consistent with Plaintiff's residual functional capacity to perform light work. [R23].

Finally, the ALJ observed that the VE found that an individual with Plaintiff's background and RFC could perform the jobs of garment sorter, production assembler, and assembler of electrical accessories. [R24]. As a result, the ALJ found that Plaintiff was not disabled at any time after his alleged onset date because he could perform other jobs in the national economy. [*Id.*].

## V.     STANDARD FOR DETERMINING DISABILITY

An individual is considered disabled for purposes of disability benefits if she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The impairment or impairments must result from anatomical, psychological, or physiological abnormalities which are demonstrable by medically accepted clinical or laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do previous work but cannot,

18

considering age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)-(3).

The burden of proof in a Social Security disability case is divided between the claimant and the Commissioner. The claimant bears the primary burden of establishing the existence of a "disability" and therefore entitlement to disability benefits. *See* 20 C.F.R. § 404.1512(a). The Commissioner uses a five-step sequential process to determine whether the claimant has met the burden of proving disability. *See* 20 C.F.R. § 404.1520(a); *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001); *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999). The claimant must prove at step one that she is not undertaking substantial gainful activity. *See* 20 C.F.R. § 404.1520(b). At step two, the claimant must prove that she is suffering from a severe impairment or combination of impairments which significantly limits her ability to perform basic work-related activities. *See* 20 C.F.R. § 404.1520(c). At step three, if the impairment meets one of the listed impairments in Appendix 1 to Subpart P of Part 404 (Listing of Impairments), the claimant will be considered disabled without consideration of age, education and work experience. *See* 20 C.F.R. § 404.1520(d). At step four, if the claimant is unable to prove the existence of a listed impairment, she

19

must prove that the impairment prevents performance of past relevant work. *See* 20 C.F.R. § 404.1520(e).  At step five, the regulations direct the Commissioner to consider the claimant's residual functional capacity, age, education and past work experience to determine whether the claimant can perform other work besides past relevant work.  *See* 20 C.F.R. § 404.1520(f).  The Commissioner must produce evidence that there is other work available in the national economy that the claimant has the capacity to perform.  In order to be considered disabled, the claimant must prove an inability to perform the jobs that the Commissioner lists. *Doughty*, 245 F.3d at 1278 n.2.

If at any step in the sequence a claimant can be found disabled or not disabled, the sequential evaluation ceases and further inquiry ends.  *See* 20 C.F.R. §§ 404.1520(a)  and 416.920(a).  Despite the shifting of burdens at step five, the overall burden rests upon the claimant to prove that she is unable to engage in any substantial gainful activity that exists in the national economy.  *Boyd v. Heckler*, 704 F.2d 1207, 1209 (11th Cir. 1983).

## VI.    SCOPE OF JUDICIAL REVIEW

The scope of judicial review of a denial of Social Security benefits by the Commissioner is limited.  Judicial review of the administrative decision addresses three

20

questions: (1) whether the proper legal standards were applied; (2) whether there was substantial evidence to support the findings of fact; and (3) whether the findings of fact resolved the crucial issues. *Fields v. Harris*, 498 F. Supp. 478, 488 (N.D. Ga. 1980). This Court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. If supported by substantial evidence and proper legal standards were applied, the findings of the Commissioner are conclusive. *Lewis v. Callahan*, 125 F.3d 1436, 1439-40 (11th Cir. 1997); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990); *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987); *Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). "Substantial evidence" means more than a scintilla, but less than a preponderance. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion and it must be enough to justify a refusal to direct a verdict were the case before a jury. *Richardson v. Perales*, 402 U.S. 389 (1971); *Hillsman*, 804 F.2d at 1180; *Bloodsworth*, 703 F.2d at 1239. "In determining whether substantial evidence exists, [the Court] must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). In contrast, review of the ALJ's

AO 72A
(Rev.8/8
2)

application of legal principles is plenary.  *Foote v. Chater*, 67 F.3d 1553, 1558 (11th Cir. 1995); *Walker*, 826 F.2d at 999.

## VII.   ANALYSIS OF CLAIMS OF ERROR

### A.   *Listing 12.05(C)*

Plaintiff argues that because he has a valid full scale IQ score of 70 and additional work-related restrictions, he presumptively meets the requirements of Listing 12.05(C), and the ALJ erred by failing to specifically address the requirements of the Listing.  [Doc. 12 at 8-11].

The Commissioner responds the ALJ considered and credited Plaintiff's diagnosis of borderline intellectual functioning, but that he does not meet the definition of mild mental retardation as required by the Listing.  [Doc. 15 at 6-9].

Under Listing 12.05:

Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.

The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.

. . .

22

> C.  A valid verbal, performance, or full scale IQ of 60 through 70 and a
> physical or other mental impairment imposing an additional and
> significant work-related limitation of function;

. . . .

20 C.F.R. Pt. 404, Subpt. P, App. 1. § 12.05C.  The introduction to mental disorders

in Appendix 1 of subpart P explains:

> If your [intellectual] impairment satisfies the diagnostic description in the
> introductory paragraph [of Listing 12.05] and any one of the four sets of
> criteria, we will find that your impairment meets the listing. . . .  For
> paragraph C, we will assess the degree of functional limitation the
> additional impairment(s) imposes to determine if it significantly limits
> your physical or mental ability to do basic work activities, *i.e.*, is a
> "severe" impairment(s), as defined in §§ 404.1520(c) and 416.920(c).  If
> the additional impairment(s) does not cause limitations that are "severe"
> as defined in §§ 404.1520(c) and 416.920(c), we will not find that the
> additional impairment(s) impose "an additional and significant work
> related limitation of function," even if you are unable to do your past
> work because of the unique features of that work.

20 C.F.R. Pt. 404, Subpt. P, App. 1. § 12.00A.  Thus, Plaintiff needs to prove that he

has: (1) a significantly subaverage general intellectual functioning with deficits in

adaptive functioning initially manifested during the developmental period; (2) an IQ

score between 60 and 70; and (3) other physical or mental impairments, which imposed

significant work-related limitations.  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1,

§§ 12.00A, 12.05C.

23

Although not specifically stated, the parties appear to agree that Plaintiff satisfies the requirements of element two because he has a valid full-scale IQ score of 70. [*See* Doc. 12 at 9 and Doc. 15 at 7 n.2].[11]  The Commissioner does not address whether the ALJ found that Plaintiff had impairments limiting his ability to work. Thus, the Court will assume that Defendant concedes that Plaintiff can establish element three of the Listing as well.[12]  Instead, the Commissioner argues that Plaintiff cannot satisfy the first element of the Listing, ie., that he cannot demonstrate "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifest during the developmental period; ie., the evidence demonstrates or supports the onset of the impairment before age 22."  Plaintiff argues that this case is governed by *Hodges v. Barnhart*, 276 F.3d 1265 (11th Cir. 2001).

In *Hodges*, the claimant was a 49-year old female with a seventh grade education and documented physical impairments.  On the WAIS, she had a verbal IQ of 67, a

_____

[11]       The Court notes that the ALJ's conclusion, therefore, that Plaintiff did not have a full scale IQ of 60 through 70, [R19], is erroneous.  In addition, the ALJ did not discuss Plaintiff's report in 1975 of receiving all Fs when the ALJ concluded that Plaintiff denied any failing grades.  [R23].

[12]       The Court also notes that the ALJ specifically found that Plaintiff impairments of hypertension, back pain, substance abuse, and borderline intellectual functioning caused "more than a minimal limitation upon the claimant's ability to do work related activities."  [R17].

24

performance IQ of 79, and a full scale IQ of 72. The doctor who administered the test found the higher performance score as compared to the verbal score was a result of her limited education, and stated she could maintain unskilled employment and manage any finances. Two non-examining psychologists opined that she was moderately limited in a number of areas of understanding and memory, sustained concentration and persistence, and social interaction, but otherwise she could work. There was no evidence of Hodges' mental capabilities before age 22. Citing this evidence, the ALJ found that Hodges did not meet the listing under § 1205C. *Hodges*, 276 F.3d at 1267-68.

The Eleventh Circuit reversed, agreeing with Hodges and other circuit courts that had addressed the issue that, absent evidence of sudden trauma that can cause retardation, the IQ tests create a rebuttable presumption of a fairly constant IQ throughout her life. *Id*. at 1268. Therefore, the court remanded Hodges' case back to the Commissioner for further proceedings, and directed that the Commissioner presume Hodges' mental impairment before age 22, with the Commissioner being able to present evidence of Hodges' daily life to rebut this presumption of mental impairment. *Id*.

Defendant's attempts to distinguish *Hodges* in this case are not persuasive. First, there is no indiction that the ALJ applied the correct law, for he did not discuss the *Hodges* presumption or its application. *See Grant v. Astrue*, 255 Fed. Appx. 374, 375 (11th Cir. 2007) (" 'The Secretary's failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal.' ") (quoting *Keeton v. Dep't of Heath & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (internal citations omitted)). In *Grant*, the claimant had a valid IQ score of 69 and an additional physical or mental impairment imposing an additional and significant work-related limitation of function. As a result, the *Grant* Court held that she was entitled to the benefit of the *Hodges* rebuttable presumption "and the ALJ was charged with determining whether there was sufficient evidence to rebut the presumption." *Id.* In the current case, the ALJ's decision is similarly lacking because it does not discuss the *Hodges* rebuttable presumption.

Next, Defendant argues that *Hodges* is distinguishable from this case because any such presumption is "rebutted by Dr. Hamby's diagnosis of borderline intellectual functioning, the records of Comprehensive Psychiatric Care, Plaintiff's work history and his educational background." [Doc. 15 at 9]. The ALJ did not articulate these reasons as a reason to not follow *Hodges*. Therefore, the Commissioner's argument

26

in his brief amounts to no more than a post hoc rationalization upon which the Court cannot base its review of agency action.  A court may not accept appellate counsel's post hoc rationalizations for agency actions.  *Baker v. Comm'r of Soc. Sec.*, No. 10-10335, 2010 WL 2511385, *3 (11th Cir.  June 23, 2010) (citing *FPC v. Texaco Inc.*, 417 U.S. 380, 397 (1974) (citation omitted)).  If an action is to be upheld, it must be upheld on the same bases articulated in the agency's order.  *Id.* (citation omitted); *see also Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962) (same); *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947)  ("[A] reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency.  If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis."); *Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir.1984) (same).

Second, even if the Court can discern in the ALJ's actual decision the Commissioner's learned appellate counsel's reasoning, the ALJ's failure to discuss Plaintiff's overall IQ of 70 and the inconsistencies of Plaintiff's self-reporting about

27

his grades (denying failing grades but receiving all Fs) render the ALJ's conclusions not supported by substantial evidence.

Third, the facts in this case are substantially similar to those in *Hodges*, and the Commissioner has not demonstrated why *Hodges* is not applicable here. Like Plaintiff, there was no indication in *Hodges* that the claimant there had special education classes (although she only went through seventh grade). Both Plaintiff and Hodges were diagnosed with borderline intellectual functioning. Although Hodges had not worked outside the home for 15 years, she raised seven children. Plaintiff's employment was limited heavy unskilled work. [R472]. On the other hand, unlike *Hodges*, 276 F.3d at 1268, there is evidence in this record of Gibson's mental capabilities before the age of 22 (his straight Fs), which appear to be consistent with his more current IQ.

Because the current case is indistinguishable from *Hodges* in material part, the case must be remanded to the Commissioner for further consideration of Plaintiff's claims.

On remand, although the ALJ does not have to make a finding of mental retardation based solely on the results of an IQ test, *see Popp v. Heckler*, 779 F.2d 1497, 1499 (11th Cir. 1986); *see also Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992), the ALJ should consider the IQ test results along with medical reports and other

AO 72A
(Rev.8/8
2)

evidence in the record, including daily activities, behavior, past work and academic experience.  *Popp*, 779 F.2d at 1499; *see also Hodges*, 276 F.3d at 1269.  As pointed out by Plaintiff, since the ALJ did not discuss the *Hodges* presumption, the ALJ failed to rebut the presumption raised by Plaintiff's IQ scores.  Thus, the ALJ failed to properly evaluate Plaintiff's mental impairments under Listing 12.05(c).

Accordingly, the decision of the ALJ is **REVERSED AND REMANDED** to the Commissioner for further consideration of Plaintiff's mental impairments under Listing 12.05(c).

B.    *VE Testimony*

Plaintiff argues that the hypothetical posed to the VE did not encompass all of his impairments.  [Doc. 12 at 12].  Specifically, Plaintiff argues that the hypothetical posed to the VE did not include all of his non-exertional limitations because the hypothetical limited Plaintiff to simple, routine work, which is not representative of a "moderate" limitation in concentration.  [*Id*. at 12-13].  Second, Plaintiff argues that the ALJ limited him to simple, routine, repetitive tasks, yet there was no evidence in the record to show that he had the work skills to perform the job of production assembler.  [*Id*. at 13-14].  Last, Plaintiff argues that the reasoning level required for

AO 72A
(Rev.8/8
2)

the jobs of production assembler and garment sorter are inconsistent with the limitation to simple, routine, repetitive work.  [*Id*. at 14].

The Commissioner responds that the ALJ posed an accurate hypothetical to the VE because the Eleventh Circuit has held that a limitation to simple, repetitive tasks to account for moderate deficits in concentration encompasses all relevant limitations.  [Doc. 15 at 12-14].  He also responds that because the ALJ asked the VE if his testimony conflicted with the DOT (Dictionary of Occupational Titles), the VE fulfilled his requirements under SSR 00-4p.  [*Id*. at 15].  Defendant further responds that the Eleventh Circuit has not addressed whether a person limited to simple, repetitive, non-detailed tasks conflicts with jobs with a reasoning level of two. [*Id*. at 15-17].  Finally, Defendant responds that Plaintiff has failed to establish that there was an actual conflict between the DOT and the VE's testimony, and that even if there was a conflict, such was not apparent at the hearing, and thus the ALJ had no duty to resolve the conflict.  [*Id*. at 17-20].

1.     *Hypothetical Posed to VE*

As stated above, Plaintiff argues that the hypothetical posed to the VE did not encompass all of his non-exertional limitations because the hypothetical limited

30

Plaintiff to simple, routine work, which is not representative of a "moderate" limitation in concentration.  [Doc. 12 at 12-13].

Defendant responds that the ALJ posed an accurate hypothetical to the VE because the Eleventh Circuit has held that a limitation to simple, repetitive tasks to account for moderate deficits in concentration encompasses all relevant limitations.  [Doc. 15 at 12-14].

In order for a VE's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments. *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002); *see also Pendley v. Heckler*, 767 F.2d 1561, 1562 (11th Cir. 1985) (" '[U]nless there was vocational expert testimony concerning the availability of jobs for a person with the claimant's educational level, work skills and experience and physical limitations, the decision of the ALJ, based significantly on the expert testimony, would be unsupported by substantial evidence.' ").

At the hearing the ALJ specifically questioned the VE:

> ALJ:  I would ask that you would assume that I might find on the basis of credible evidence that this claimant demonstrated exertional impairments would reflect a residual functional capacity for a range of light work, and I would ask that you also assume that I would find him to have some non-exertional impairments that would preclude

31

him from any climbing of ladders, ropes, and scaffolds or any crawling, and he would also be precluded from any work around hazards, such as dangerous moving machinery or the operation of motor vehicles or working at unprotected heights. Also assume that I would find him to be limited to no more than frequent climbing of stairs and ramps, stooping, bending from the waist to the floor, and crouching. I would ask that you also assume that I might find this claimant would require jobs that would involve no more than simple, repetitive, non-detailed tasks and jobs that would be consistent with one who might be diagnosed as borderline intellectual functioning. Under that hypothetical, it's somewhat axiomatic he could not return to his prior relevant work at the levels which he was doing, that it was done. Therefore, I would ask you to take into account these non-exertional restrictions, hypothetical person of this clamant's younger age, limited education, and prior relevant work, and ask you sir, are there jobs existing in the general area or in several regions of the country that this claimant might perform?

VE: Yes, Your Honor.

ALJ: Would you give me some examples and numbers?

VE: All right. Such an individual could work as a garment sorter, which is light, unskilled work activity. In Georgia, there are approximately 4000 of these jobs, and in the United States, approximately 36,000. Such an individual could work as a production assembler, which is unskilled, light work activity. In Georgia, there are approximately 27,000 of these jobs, and in the United States 970,000. Such an individual could work as an assembler, electrical accessories, an unskilled, light work activity. In Georgia, there are approximately 5,500 of these jobs, and in the United States approximately 267,000.

AO 72A
(Rev.8/8
2)

[R472-73].

The Court concludes that the ALJ erred in formulating the hypothetical question posed to the VE. According to Defendant, the ALJ's hypothetical limiting Plaintiff to "simple, repetitive, non-detailed tasks and jobs" took into account Plaintiff's moderate limitation in maintaining concentration, persistence and pace. However, in the hypothetical posed to the VE, the ALJ made no mention of any mental impairments. [R472-75]. Thus, it is not clear whether the hypothetical adequately took into account Plaintiff's mental impairments as recognized by the ALJ. *See Stewart v. Astrue*, 561 F.3d 679, 686 (7th Cir. 2009) ( "The Commissioner continues to defend the ALJ's attempt to account for mental impairments by restricting the hypothetical to 'simple' tasks, and we and our sister courts continue to reject the Commissioner's position."); *Ramirez v. Barnhart*, 372 F.3d 546, 554 (3d Cir. 2004) (holding that "a requirement that a job be limited to one to two step tasks, as was stated in the hypothetical relied upon by the ALJ, does not adequately encompass a finding that [plaintiff] often has deficiencies in concentration, persistence, or pace, as was noted by the ALJ . . ."); *see also Wiederholt v. Barnhart*, 121 Fed. Appx. 833, 839 (10th Cir. 2005) (limitation to simple, unskilled tasks not sufficient to incorporate impairments such as moderate difficulties with maintaining concentration, persistence, or pace); *Jones v. Astrue*,

AO 72A
(Rev.8/8
2)

No. 3:08-cv-875-J-HTS, 2009 WL 1039437, *2 (M.D. Fla. Apr. 16, 2009) (same);

*Leighton v. Astrue*, No. 07-142-B-W, 2008 WL 2593789, *4 (D. Me. June 30, 2008)

(noting that "limitations on contact with the public, routine supervision, interaction

with coworkers, and work changes and pace" inadequate to account for "moderate

difficulties in maintaining social functioning and concentration, persistence or pace");

*Davis v. Astrue*, Civil Action No. 06-3550, 2007 WL 2248830, *4 (E.D. Pa. July 30,

2007) (requiring deficiencies in concentration, persistence or pace to be specified in the

hypothetical).  *But see Oates v. Astrue*, No. CA 08–078-CG-C, 2009 WL 1154133, *4

(S.D. Ala. Apr. 27, 2009) ("The undersigned cannot agree with plaintiff that the ALJ's

hypotheticals posed to the VE were non-comprehensive due to their failure to include

'mild' limitations of activities of daily living, no more than 'mild' limitations in social

functioning, and no more than 'moderate' deficiencies in concentration, persistence or

pace in work settings or elsewhere.  This is because such limitations were sufficiently

encompassed by the ALJ's charge to the VE to assume that the hypothetical individual

'has mental limitations such that the individual should perform only simple and

repetitive unskilled work tasks.' "); *Chartier ex rel. Chartier v. Astrue*, No. 07-10912,

2008 WL 795873, *4 (E.D. Mich. Mar. 26, 2008) (holding that where ALJ found

plaintiff's severe mental impairments to result in moderate difficulty in maintaining

AO 72A
(Rev.8/8
2)

concentration, persistence, or pace, mild restriction of activities of daily living and social functioning, and no episodes of decompensation, hypothetical limiting plaintiff to employment consisting of 'simple and repetitive job tasks' accurately portrayed plaintiff's employment-related limitations stemming from impairments from depression and alcohol addiction).

The Court concludes that the ALJ failed to pose a hypothetical to the VE which adequately encompassed Plaintiff's mental impairments which included moderate difficulties in concentration, persistence and pace. [R19]. Accordingly, the decision of the Commissioner is **REVERSED AND REMANDED** on the ground that the ALJ did not pose a proper hypothetical to the VE.

### 2.     *SSR 00-4p*

Plaintiff argues that because the hypothetical posed to the VE was erroneous, the ALJ did not comply with SSR 00-4p and the case should be remanded back to the Commissioner. [Doc. 12 at 14]. The Commissioner responds that because the ALJ asked the VE if his testimony conflicted with the DOT, the VE fulfilled his requirements under SSR 00-4p. [Doc. 15 at 14-15]. Defendant also responds that Plaintiff has failed to establish that there was an actual conflict between the DOT and the VE's testimony. [*Id*. at 17]. Finally, Defendant argues that even if there was a

AO 72A
(Rev.8/8
2)

conflict between the DOT and the VE's testimony, such conflict was not apparent at the hearing, and therefore, does not require reversal.  [*Id*. at 17-20].

Social Security Ruling 00-4p squarely addresses the situation where the VE's testimony conflicts with the DOT and how the ALJ should handle it.  *Estrada v. Barnhart*, 417 F. Supp. 2d 1299, 1302 (M.D. Fla. 2006).  The ruling requires the ALJ to ask the VE whether any possible conflict exists between his testimony and the DOT, and if the testimony appears to conflict with the DOT to "elicit a reasonable explanation for the apparent conflict." *Id*. (citing SSR 00-4p).  The ruling requires the explanation be made on the record and the ALJ to explain in his decision how the conflict was resolved.

Here, although the ALJ did not use the specific word "inconsistency," he did question the VE as follows:

ALJ:  And what resources did you rely upon to reach your opinions?

VE:  The Dictionary of Occupational Titles and codes and the Bureau of Labor Statistics from the US Department of Labor.

ALJ:  Have you intentionally deviated from any of these materials?

VE:  No sir.

[R473-74].  Thus, it is apparent that the ALJ satisfied the first part of SSR 00-4p by inquiring as to whether there was a conflict between the DOT and the VE's testimony.

36

Plaintiff appears to focus his argument on second part of the duty imposed on the ALJ under SSR 00-4p: that the ALJ resolve any conflict between the testimony of the VE and the DOT.  As noted above, there was no testimony at the hearing that there was any inconsistency and Plaintiff's counsel did not question the VE about any possible inconsistency.  [R477].  Instead, Plaintiff now argues that because the ALJ limited Plaintiff to jobs that required only simple, routine, repetitive, non-detailed tasks, he could not perform the identified jobs of garment sorter, production assembler, and electrical accessories assembler because these jobs required a reasoning level of "R2" [Doc. 12 at 13-14].  Plaintiff argues that the DOT limits an individual who can only perform simple, routine, repetitive, non-detailed tasks to a reasoning level of "R1."  [*Id.* at 13].

Even assuming there is an inconsistency between the DOT and the VE's testimony, the Court concludes that the ALJ did not err under SSR 00-4p.  Although the issue has not been addressed by the Eleventh Circuit, precedent prior to SSR 00-4p allowed for the VE's testimony to "trump" the DOT when there was a conflict.  *See Jones v. Apfel*, 190 F.3d 1224, 1229-30 (11th Cir. 1999).  The *Jones* Court determined that the VE could trump the DOT because

> the DOT itself states that it is not comprehensive.  It provides occupational information on jobs in the national economy, and it instructs

37

> "DOT users demanding specific job requirements [to] supplement th[e] data with local information detailing jobs within their community." Additionally, the Code of Federal Regulations states that the SSA will take administrative notice of reliable job information available from various governmental and other publications, such as the DOT. By this wording, the SSA itself does not consider the DOT dispositive.

*Id.* at 1230 (internal citations omitted). Although SSR 00-4p came out after *Jones*, it does not impose an independent duty on the ALJ to investigate whether there is a conflict between the VE's testimony and the DOT. *See* SSR 00-4p. Instead, the ruling only requires that the ALJ inquire into whether these is a conflict to address such conflict if one exists.

Here, as discussed above, the ALJ fulfilled his duty of inquiring of the VE as to whether there was a conflict between the VE's testimony and the DOT. Additionally, Plaintiff, who was represented by counsel, never raised any possible conflicts or questioned the ALJ about any such conflicts. [R475]. Thus, because no conflicts between the VE's testimony and the DOT were raised at the hearing, the ALJ was not required to address SSR 00-4p at the hearing. *See Garskof v. Astrue*, No. 5:07-cv-288Oc-GRJ, 2008 WL 4405050, *6 (M.D. Fla. Sept. 26, 2008) ("In the instant case the ALJ complied with the requirements of SSR 00-4p when she affirmatively directed the VE to make the ALJ aware of any conflicts between the VE's testimony and the DOT. Plaintiff never identified any conflicts at the hearing and never raised any conflict

38

through questioning the VE, despite being represented by counsel. Accordingly, because there were no conflicts between the VE's testimony and the DOT, which were identified at the hearing, the ALJ was not required under SSR 00-4p to address and resolve any conflict."); *Brijbag v. Astrue*, No. 8:06-cv-2356-T-MAP, 2008 WL 276038, *2 (M.D. Fla. Jan.31, 2008) ("[T]he ALJ need not independently corroborate the VE's testimony and should be able to rely on such testimony where no apparent conflict exists with the DOT."); *Lembke v. Barnhart*, No. 06-C-0306-C, 2006 WL 3834104, *15 (W.D. Wis. Dec. 29, 2006) (reversal is not warranted where plaintiff identifies a conflict after the hearing but during the hearing no conflict was identified so long as the ALJ complied with SSR 00-4p by asking the VE at the hearing to identify conflicts); *Gibbons v. Barnhart*, 85 Fed. Appx. 88, 93 (10th Cir. 2003) (no error under SSR 00-4p where the VE did not identify conflicts with the DOT).

Accordingly, the undersigned finds that the ALJ's decision should be **AFFIRMED** on this ground.

C.    *Combination of Impairments*

Plaintiff argues that the ALJ failed to consider all of his impairments because he gave very little discussion before finding Plaintiff's anxiety to be a non-severe impairment despite a documented history and Plaintiff's testimony about receiving

39

treatment for the same.  [Doc. 12 at 15-16].  The Commissioner responds that the ALJ

properly considered the limitations posed by Plaintiff's anxiety disorder.  [Doc. 15

at 20-21].

 The ALJ must consider the combined effects of a claimant's impairments, severe

and non-severe, before making a disability determination.  *See* 20 C.F.R. §§ 404.1520,

404.1523; *Walker*, 826 F.2d at 1001.  If the combined impact of impairments is

medically severe, the ALJ will consider the combined impact throughout the disability

determination process.  20 C.F.R. § 404.1523; *Davis v. Shalala*, 985 F.2d 528, 531

(11th Cir. 1993).  The ALJ considers symptoms and signs including pain to determine

whether a combination of impairments is severe and whether the combined

impairments meet or equal the listings.  20 C.F.R. § 404.1529(d)(1), (3).  Also, the ALJ

must "make specific and well-articulated findings as to the effect of the combination

of impairments and to decide whether the combined impairments cause the claimant

to be disabled."  *Walker*, 826 F.2d at 1001 (quoting *Bowen v. Heckler*, 748 F.2d 629,

635 (11th Cir. 1984)).  However, the Eleventh Circuit has determined that the ALJ

sufficiently makes findings regarding the effect of the combination of impairments by

simply stating: "the medical evidence establishes that [the claimant] had [several

conditions] which constitute a 'severe impairment', but that he did not have an

AO 72A
(Rev.8/8
2)

impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4."  *Wilson*, 284 F.3d at 1224-25; *Jones v. Dep't of Health and Human Servs.*, 941 F.2d 1529, 1533 (11th Cir. 1991) (holding that the evidence showed that the ALJ considered the combined effect of the claimant's impairments when the ALJ found that although the claimant " '[had] severe residuals of an injury to the left heel and multiple surgeries on that area,' he [did] not have 'an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulation No. 4.' ").

The Court concludes that the ALJ did not err in evaluating the combined effect of Plaintiff's impairments.  First, in rejecting Plaintiff's claim of disability, the ALJ specifically stated that Plaintiff did not have "an impairment or *combination of impairments* that meets or medically equals one of the listed impairments in 20 CFR 404, Subpart P, Appendix 1."  [R14] (emphasis added).  This is sufficient evidence to show that the ALJ considered all of Plaintiff's impairments.

Second, Plaintiff has failed to show that his anxiety and depression caused any functional limitations.  Despite his subjective testimony about his psychiatric treatment and sleeping difficulties, the evidence shows that Plaintiff has never been prescribed anti-depression medication, but has been prescribed anti-anxiety medication.  [R18].

41

However, when examined by a consulting psychologist in August 2005, Plaintiff reported no suicidal thoughts and that he 'feels he is doing fine with is mental condition." [R18, 148-49].  Additionally, the ALJ noted that records from Plaintiff's treating psychiatrist indicate that from February 2006 through January 2008, Plaintiff only saw his psychiatrist for medication management and refills. [R18, 361-71].  The treatment notes also indicate that Plaintiff reported improvement after beginning treatment with his psychiatrist and was repeatedly noted upon mental status examination to deny hallucinations, suicidal or homicidal ideation or appetite disturbance.  [*Id*.].  Additionally, the ALJ observed that, at Plaintiff's last three appointments with his treating psychiatrist, Plaintiff reported that he was doing okay and only had his medications refilled.  [R18, 361-64].  Because the ALJ specifically stated that he considered Plaintiff's impairments in combination, and because Plaintiff cannot show that his anxiety and depression were severe impairments, substantial evidence supports the ALJ decision regarding Plaintiff's combination of impairments.  Accordingly, the undersigned finds that the ALJ's decision should be **AFFIRMED** on this ground.

42

**VIII.  CONCLUSION**

For the reasons set forth above the decision of the Commissioner is **AFFIRMED IN PART** and **REVERSED IN PART**.   This matter is **REMANDED** to the Commissioner for further consideration of Plaintiff's claims consistent with this Order.

Pursuant to the Eleventh Circuit's suggestion in *Bergen v. Commissioner of Social Security*, 454 F.3d 1273, 1278 n.2 (11th Cir. 2006), Plaintiff **SHALL** have until **ninety (90) days** after she receives notice of any amount of past due benefits awarded to seek attorney's fees under the Social Security Act, 42 U.S.C. § 406(b); *see also Blitch v. Astrue*, No. 07-11298, 2008 WL 73668, *1 n.1 (11th Cir. Jan. 8, 2008).

The Clerk is **DIRECTED** to enter judgment for Plaintiff.

**IT IS SO ORDERED and DIRECTED**, this the   13th    day of September, 2010.

_____
**ALAN J. BAVERMAN**
**UNITED STATES MAGISTRATE JUDGE**

43